**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 18-cr-195-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1.    JOSEPH MEYER PLATT,**

Defendant.

---

## ORDER AFFIRMING DETENTION ORDER

---

The Government charges Defendant Joseph Meyer Platt ("Platt") with

possession with intent to distribute ecstasy (Count 1), possession with intent to

distribute 500 grams or more of cocaine (Count 2), and possession of a firearm in

connection with a drug trafficking offense (Count 3).  (ECF No. 1.)  Currently before the

Court is Platt's Motion to Review Detention Order ("Motion for Review") (ECF No. 22),

challenging U.S. Magistrate Judge Michael J. Watanabe's May 23, 2018 decision to

detain Platt prior to trial (ECF No. 10).  The Court held an evidentiary hearing and oral

argument on September 19, 2018, and then took the motion under advisement.  For the

reasons explained below, Judge Watanabe's detention order will be affirmed.

## I.  DETENTION PRESUMPTIONS & STANDARD OF REVIEW

**A.    Initial Standard**

The Court "shall order the detention of the [defendant] before trial" if the Court

finds, after a hearing, "that no condition or combination of conditions will reasonably

assure the appearance of the person as required and the safety of any other person

and the community."  18 U.S.C. § 3142(e)(1).  "Subject to rebuttal by the [defendant], it

shall be presumed that no condition or combination of conditions will reasonably assure

the appearance of the [defendant] as required and the safety of the community if the

judicial officer finds that there is probable cause to believe that the person committed

* * * an offense for which a maximum term of imprisonment of ten years or more is

prescribed in the Controlled Substances Act."  *Id.* § 3142(e)(3)(A).[1]

The Rules of Evidence do not apply in a detention hearing.  *Id.* § 3142(f)(2).

"The facts the judicial officer uses to support a finding pursuant to subsection (e) that no

condition or combination of conditions will reasonably assure the safety of any other

person and the community shall be supported by clear and convincing evidence."  *Id.*[2]

The factors the Court "shall" consider are:

> (1) the nature and circumstances of the offense charged,
> including whether the offense . . . involves . . . a controlled
> substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition,
> > family ties, employment, financial resources, length of
> > residence in the community, community ties, past
> > conduct, history relating to drug or alcohol abuse,
> > criminal history, and record concerning appearance at
> > court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest,
> > the person was on probation, on parole, or on other

---

[1] This applies to Platt because Counts 1 and 2 allege violations of the Controlled
Substances Act punishable by up to twenty years' and forty years' imprisonment, respectively.
(*See* ECF No. 1-1 at 1.)

[2] It is not clear what burden of proof applies if the only worry is that the defendant is a
flight risk.  The Government argues that it is preponderance of the evidence (ECF No. 25 at 3),
and Platt says nothing to the contrary.

> release pending trial, sentencing, appeal, or completion
> of sentence for an offense under Federal, State, or local
> law; and
>
> (4) the nature and seriousness of the danger to any person
> or the community that would be posed by the person's
> release.

*Id.* § 3142(g).

## B.     Review & Reopening

"If a person is ordered detained by a magistrate judge, . . . the person may file,

with the [district court], a motion for revocation or amendment of the order."  18 U.S.C.

§ 3145(b).  The district judge then reviews the magistrate judge's decision *de novo*.

*United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

> *De novo* review, however, does not necessarily mean
> holding an evidentiary hearing.  Although a district court may
> start from scratch and take evidence, it may also review the
> evidence that was before the magistrate judge and make its
> own independent determination as to whether the magistrate
> judge's findings and detention order are correct.  This is a
> matter of discretion for the district court.

*United States v. Romero*, 2010 WL 11523871, at *2 (D. Colo. May 17, 2010) (internal

quotation marks and citations omitted).

If a defendant wishes to bring new evidence to the Court's attention, the

defendant is deemed to be "reopening" the detention hearing, and such a proceeding is

governed by a different statute:

> The [detention] hearing may be reopened, before or after a
> determination by the judicial officer, at any time before trial if
> the judicial officer finds that information exists that was not
> known to the movant at the time of the hearing and that has
> a material bearing on the issue whether there are conditions
> of release that will reasonably assure the appearance of
> such person as required and the safety of any other person
> and the community.

18 U.S.C. § 3142(f)(2).

## II. THE PRIOR HEARING & JUDGE WATANABE'S DECISION

Before Judge Watanabe, the Government's only witness was an ATF agent who did no more than read the after-action reports from the Boulder County Narcotics Task Force, which had searched Platt's residence pursuant to a state warrant on June 6, 2017. (ECF No. 18 at 5–15.) In other words, the ATF agent offered nothing that Judge Watanabe could not have learned from reading the same reports.

According to those reports, a SWAT team executed the search warrant, as opposed to less heavily armed officers, because of some vaguely described prior incident that prompted the police to worry about Platt's possible behavior when confronted with officers at his door. And, as the agents were about to execute the warrant, Platt indeed picked up a gun, but put it down "once he realized who was at the door." (*Id.* at 7.)[3] So the search went without incident. The Boulder officers discovered four firearms, more than 2,700 rounds of ammunition, 500 grams of cocaine, and over 1,000 grams of liquid MDMA (ecstasy). At least one of the firearms—the one Platt picked up and then put down—was a semi-automatic pistol with more than nine rounds in the clip.

Platt's attorney countered the ATF agent's testimony with the following points:

- The search took place on June 6, 2017. Platt was not arrested until May 16, 2018. In the interval, Platt knew he likely would be arrested but never left Colorado.

- Platt's actual arrest was uneventful.

---

[3] Apparently the front door had a large inset window through which Platt and the officers outside could see each other.

- Platt no longer possesses any weapons.

- Platt's parents have moved from Pennsylvania to Denver. They are semi-retired and work from home, so they are at home most of the time and could therefore be ideal custodians for Platt.

Summarizing the testimony and arguments at the hearing and also the information in the Pretrial Services report, Judge Watanabe particularly noted the following:

- The fact that the Boulder police decided a SWAT team was necessary to execute the search warrant suggests a history of potentially dangerous behavior.

- The search found a large quantity of drugs and ammunition.

- Platt has a substantial history of mental illness including threats of suicide in front of his mother with a knife in hand.

- Platt has an extensive history of abusing alcohol, marijuana, ecstasy, LSD, and cocaine.

- Platt used cocaine about a week before his arrest, and marijuana the day before his arrest, despite the structure that his parents are supposedly providing for him now.

- Platt was charged with felony menacing,[4] but completed a successful deferred judgment program.

- At least once in the past (timeframe unclear), Platt failed to appear in court, prompting a bench warrant.

---

[4] This occurred in May 2014. (*See* ECF No. 22 at 5).

Judge Watanabe concluded "that recent use of illicit drugs . . . coupled with mental health issues . . . is, quite frankly, a formula for disaster, when you take into consideration weapons were also involved in this case." (*Id.* at 33.) Thus, he announced at the detention hearing that he found by clear and convincing evidence that no conditions could reasonably assure Platt's presence or the safety of the community. This was then reduced to a written order entered later the same day. (ECF No. 10.)

### III. PLATT'S ARGUMENTS

Platt's Motion for Review does not argue that any part of Judge Watanabe's ruling was wrong. Rather, Platt takes a very different approach, providing even more detail about his extensive history of substance abuse (which began with pain medication prescribed to him after an athletic injury in his early teens) and his history of mental health problems (which may derive in part from substance abuse, but which can also be traced to a concussion he experienced in his later teens). In this vein, Platt argues that his real problem, all along, is that his mental health providers did not understand "the extent of his addiction to drugs," and therefore provided ineffective therapy. (*Id.* at 7–8.) Supposedly, a "co-morbid diagnosis of addiction and bipolar conditions" requires special treatment. (*Id.* at 8.) And "[t]he structure for [such dual-diagnosis] treatment and rehabilitation is now available [to Platt] at The Center for Dependency and Rehabilitation (CeDAR), a non-profit facility [that is] connected with the University of Colorado Hospital, Ans[c]hutz Center." (*Id.*) Platt "has been accepted as an inpatient resident at CeDAR as soon as he is able to begin the program." (*Id.*) Consistent with these claims, the evidence Platt presented at the evidentiary hearing comprised testimony regarding his mental diagnoses and regarding the CeDAR program and its facilities.

The Motion for Review, therefore, is not really a challenge to Judge Watanabe's

ruling. It barely engages any of the factors Judge Watanabe was required to consider (and what the Court would be required to consider) under 18 U.S.C. § 3142(g). It is more or less an argument that Platt's criminal and drug-abusive history can largely be attributed to unfortunate circumstances in his past and that he needs special treatment, rather than detention. In other words, Platt focuses on what he needs, and not whether he is a flight risk or a danger to the community.

At oral argument following the hearing, the Court asked counsel for Platt whether, in light of the evidence presented, the Motion for Review should actually be considered under the "reopening" standard in 18 U.S.C. § 3142(f)(2), rather than the review standard in 18 U.S.C. § 3145(b). Counsel for Platt agreed that he was presenting additional evidence, unavailable to Judge Watanabe, that now allegedly provides an assurance of safety to Platt and others and an assurance that he will appear in court. The Court will therefore analyze the Motion for Review under the "reopening" standard in § 3142(f)(2).

## IV. ANALYSIS

The only statutory basis for reopening a detention hearing is "information . . . that was not known to the movant at the time of the hearing." 18 U.S.C. § 3142(f)(2). Platt's attorney represents that, at the time of the detention hearing, *he* (the attorney) did not know the extent of Platt's mental illness, but he does not represent that *Platt* similarly lacked that knowledge. The Court therefore inquired of Platt's counsel what Platt did not know when he appeared before Judge Watanabe that would justify reopening the detention hearing. Counsel answered that Platt had been in denial about the seriousness of his conditions and did not understand the significance of his dual diagnosis. This statement is controverted, however, by Platt's expert report from Dr.

Doris Gunderson, in which there is a reference to the fact that sometime in the last four years, Platt's psychotherapist "recommended residential treatment to address his dual diagnoses but [Platt] rejected this idea."  (ECF No. 24-1 at 3.)  Clearly, then, Platt had been counseled to participate in dual diagnosis treatment prior to the hearing before Judge Watanabe, and thus cannot now credibly claim to have been unaware of his need for this treatment until *after* the original detention hearing.  Accordingly, Platt offers nothing that he did not know when he appeared before Judge Watanabe, and so fails to meet the statutory basis for reopening a detention hearing.

Even if the case were otherwise, Platt offers no authority for the notion that detention decisions may be made based on a new mental health diagnosis and a willingness to arrange and pay for an inpatient treatment program that somewhat mimics the restrictions of a pretrial detention facility (assuming he remains in the program).  The Court does not doubt that Platt has a genuine need for treatment, but under the statutory framework that binds this Court, Platt's needs are secondary to the question of whether he poses a flight risk or a danger to himself or the community.  *See* 18 U.S.C. § 3142(g).

## V.  CONCLUSION

For the reasons set forth above, the Magistrate Judge's May 23, 2018 detention order (ECF No. 10) is AFFIRMED.

Dated this 1st day of October, 2018.

BY THE COURT:

William J. Martinez
United States District Judge

8