IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 18-cr-195-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     **JOSEPH MEYER PLATT,**

      Defendant.

---

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

---

      Before the Court is Defendant's Emergency Motion for Compassionate Release. (ECF No. 177.) For the reasons explained below, the Court denies this motion.

**I. BACKGROUND**

      On March 13, 2019, Defendant Joseph Meyer Platt ("Platt") pleaded guilty to knowingly and intentionally possessing approximately 567 grams of cocaine with the intent to distribute it, and to knowingly carrying and using a firearm, during and in relation to his drug trafficking crime. (*See* ECF Nos. 125–26.) On July 19, 2019, the Court sentenced him to 96 months' imprisonment and four years' supervised release following imprisonment. (ECF No. 175.)

      Platt has been in custody since his arrest on May 16, 2018. (*See* ECF No. 4.) Thus, as of today, Platt has served almost 26 months of his sentence.

      Platt filed the motion currently at issue on May 11, 2020. (ECF No. 177.) As of that date, he claims that FCI Lompoc, where he is currently housed, "rank[ed] first in

overall [COVID-19] infections across the entire federal prison system." (*Id.* at 4 (citing https://www.bop.gov/coronavirus/).) Platt attaches a letter from a psychiatrist he retained to evaluate him during the prosecution, Dr. Doris C. Gunderson, who notes that Platt suffers from chronic pain and depression, both of which can reduce the immune system's effectiveness in fighting disease. (ECF No. 171-1 at 1.) Dr. Gunderson therefore opines "with reasonable medical certainty that Mr. Platt is at heightened risk for contracting COVID19 with potentially lethal consequences." (*Id.* at 2.) Platt is currently 25 years old. (*See* ECF No. 139 at 3.)

Platt asks for "a temporary transfer to home confinement" until a vaccine "is discovered, manufactured, and distributed to the population." (ECF No. 177 at 7; *see also id.* at 14 (reiterating request for a "[t]emporar[y] transfer[] . . . to a term of home detention").)

## II.  ANALYSIS

Platt invokes the Court's authority to grant what is commonly referred to as "compassionate release." The statutory basis for compassionate release is as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[1] may reduce the term of imprisonment (and may impose a term of probation or

---

[1] The Government does not contest that Platt asked the BOP to bring a motion on his behalf and received no response within thirty days. (*See* ECF No. 177 at 6–7.)

2

> > supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> >
> > > (i) extraordinary and compelling reasons warrant such a reduction; or
> > >
> > > (ii) the defendant is at least 70 years of age [along with various other conditions not relevant here];
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).

As this statutory language makes clear, the Court cannot order the BOP to transfer Platt to home confinement for the remainder of his prison sentence (much less temporarily transfer him until the pandemic passes). The Court may only "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)." *Id.* To have Platt released from prison *immediately* under this authority, the Court would need to re-sentence Platt to time served (*i.e.*, 26 months).

Theoretically, the Court could re-sentence Platt to time served and then designate "the unserved portion of the original term of imprisonment" (70 months) as probation or supervised release—and then, *as a condition of that probation or supervised release*, order that Platt never leave his home (save for, *e.g.*, necessary medical care). That would be, in effect, a transfer to home confinement for 70 months. But that would also be an unprecedented use of probation or supervised release.

The Court will nonetheless assume, for the sake of argument, that it may employ probation or supervised release in this manner. Even under that assumption, the Court

3

would need to find that a reduction from 96 months to 26 months of imprisonment is warranted. The Court finds, for the reasons that follow, that such a reduction is not warranted in Platt's case.

First, Platt must demonstrate "extraordinary and compelling reasons" that are "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A) & (c)(1)(A)(i). One Sentencing Commission policy statement that appears potentially relevant here is the following:

> [E]xtraordinary and compelling reasons exist [if] * * * [t]he defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. 1(A)(ii). The same policy statement also contains a safety valve for unexpected circumstances specific to the inmate: "[E]xtraordinary and compelling reasons exist [if] * * * [a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons [explicitly set forth]." *Id.* cmt. 1(D).

Platt does not fall within either part of the policy statement. Although the Court has seriously considered Dr. Gunderson's opinion, the Court finds it insufficient under the circumstances. Platt is 25 years old, and even if his chronic pain and depression somewhat impair his immune system, the Court cannot find on this record that he is so

4

immunocompromised as to be at risk of a severe case of COVID-19, assuming he becomes infected.

Moreover, risk of infection appears much lower today than it did when Platt filed his motion. The BOP website from which Platt drew the conclusion that FCI Lompoc "rank[s] first in overall [COVID-19] infections across the entire federal prison system" as of May 11, 2020 (ECF No. 177 at 4) shows as of today that FCI Lompoc has no inmates currently testing positive for the virus, two staff currently testing positive, two inmate deaths attributed to the virus, no staff deaths attributed to the virus, 858 inmates deemed "recovered," and 16 staff likewise deemed "recovered." *See* "COVID-19 Cases" (table), *at* https://www.bop.gov/coronavirus/ (last accessed July 8, 2020). The Court recognizes that additional waves of the virus may continue to threaten the facility until a vaccine or an effective treatment is discovered. However, while FCI Lompoc appears to have been a frightening place for a prisoner to be housed at the outset of the pandemic, conditions appear to have improved greatly and the BOP now has much greater experience dealing with COVID-19.

Finally, even if the Court found extraordinary circumstances in Platt's case, the Court would need to find that the 18 U.S.C. § 3553(a) factors weigh in favor of a 26-month prison sentence. *See* 18 U.S.C. § 3582(c)(1)(A). They do not. As explained at Platt's sentencing hearing, law enforcement officers raided Platt's residence and found 567 grams of cocaine, 1,161 grams of MDMA, other narcotics, about $9,700 in cash, three firearms, and nearly 3,000 rounds of ammunition. Obviously these items had not simply fallen into Platt's hands that day—they are evidence of his large-scale drug distribution activities for months or years prior. But even the 567 grams of cocaine seized at his residence would be enough for roughly 5,000 to 22,000 individual-use

doses.  And Platt was prepared to protect this stash with an Uzi pistol, two 9 mm semi-automatic pistols, and a shotgun.

Moreover, the Court found at Platt's sentencing hearing that his Guidelines range (taking the two Counts together) was 84–132 months.  The Court partially granted a motion for downward variance to arrive at the 96-month total sentence.

At a minimum, then, reducing Platt's term of imprisonment to 26 months would not "reflect the seriousness of the offense, . . . promote respect for the law, [or] provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A); would not "afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B); and would provide a grossly "unwarranted sentence disparit[y] [as compared to] defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6).

For all of these reasons, compassionate release is inappropriate in Platt's case.

### III.  CONCLUSION

For the reasons set forth above, Platt's Emergency Motion for Compassionate Release (ECF No. 177) is DENIED.

Dated this 8th day of July, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge